# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA BULLISS,

        Plaintiff,

v

STEELCASE, INC,

        Defendant/Third-Party Plaintiff-
        Appellee/Cross-Appellant,

and

TITAN TRANSPORTATION SERVICES, INC,
doing business as SUNSET LOGISTICS,

        Third-Party Defendant-
        Appellant/Cross-Appellee.

UNPUBLISHED
June 20, 2017

No. 330776
Kent Circuit Court
LC No. 13-003196-NO

TITAN TRANSPORTATION SERVICES, INC,

        Plaintiff-Appellee,

and

STEELCASE, INC,

        Intervening Plaintiff-Appellee,

v

SELECTIVE INSURANCE COMPANY OF
AMERICA,

        Defendant,

and

SELECTIVE INSURANCE COMPANY OF THE

No. 332227
Kent Circuit Court
LC No. 14-008018-CK

-1-

SOUTHEAST,

                    Defendant-Appellant.

_____

Before:  Swartzle, P.J., and Saad and O'Connell, JJ.

Per Curiam.

These consolidated appeals involve separate but related lawsuits arising from the parties' disputes over their respective contractual rights and obligations with regard to the indemnification of a negligence action by plaintiff, Linda Bulliss, against defendant and third-party plaintiff, Steelcase, Inc. (Steelcase).  In Docket No. 330776, Titan Transportation Services, Inc. (Titan) argues that the trial court in the negligence case erred when it concluded that Titan was obligated to indemnify Steelcase for Bulliss's claim.  On cross-appeal, Steelcase argues that the trial court erred when it refused to award it attorney fees and costs under the indemnification agreement.  In Docket No. 332227, Selective Insurance Company of the Southeast (Selective) argues that the trial court in a related lawsuit (the insurance case) erred when it determined that Selective's insurance policy covered the injury at issue in the negligence case and, for that reason, erred when it declared that Selective had a duty to defend and indemnify Titan and Steelcase.

In Docket No. 330776, we conclude that the trial court properly held that the parties' indemnification agreement obligated Titan to pay the damages Steelcase incurred through Bulliss's negligence claim, and that the trial court properly concluded that Titan's obligation to indemnify Steelcase did not extend to Steelcase's attorney fees and costs.  In Docket No. 332227, we decline to address Selective's new argument, which is raised for the first time on appeal, and find Selective's argument otherwise insufficient to overturn the trial court's judgment.  Accordingly, we affirm the trial court's judgments in both dockets.

I.  BACKGROUND

In March 2010, Titan entered into an agreement with Steelcase—titled the Master Purchase Agreement (MPA)—in which it agreed to provide Steelcase with transportation services.  In ¶ 9 of that agreement, Titan agreed to purchase liability insurance and to name Steelcase as an additional insured.  It also agreed to "hold harmless and indemnify [Steelcase] for . . . any claim by any employee" of Titan.  In a separate indemnity provision found in ¶ 10, Titan more broadly agreed to "at all times indemnify, defend and hold harmless [Steelcase], its agents and employees against and from any and all claims arising from the services provided hereunder . . . unless due to negligence or willful misconduct by [Steelcase]."

In October 2012, Linda Bulliss, a driver for Titan, picked up a semitrailer loaded with merchandise from a Steelcase facility.  As she was leaving, she stopped at a security station, and she and a security guard inspected the cargo.  She noticed that some furniture weights were not strapped down.  She expressed concern to the guard, and he purportedly told her that the weights were heavy enough that they did not need to be strapped down.  Bulliss then sealed the trailer

and transported the load to a destination in Missouri. When she arrived, Bulliss opened the trailer's door and a furniture weight fell from the trailer onto her foot and injured her.

Bulliss sued Steelcase in April 2013 for negligently securing the furniture weights. That same month, Steelcase's lawyer notified Titan and Selective about Bulliss's lawsuit and asserted that Titan was obligated under the MPA to defend and indemnify it for any losses. Titan refused to defend Steelcase and Selective similarly denied that the separate Commercial General Liability (CGL) policy that it issued Titan, upon which Steelcase was named as an additional insured, covered the injury.

In September 2013, Steelcase filed a third-party complaint against Titan in the negligence case. It alleged that Titan breached the MPA by refusing to defend and indemnify it against Bulliss's claim. In turn, Titan sued Selective in the insurance case in August 2014. It alleged that, under the terms of the CGL policy that Selective issued to Titan, Selective was obligated to defend and indemnify Titan for any losses in the negligence case.

In September 2014, Steelcase moved for summary disposition in the negligence case. In December 2014, the trial court denied Steelcase's motion to dismiss Bulliss's claim, but granted Steelcase's motion on its third-party claim against Titan. With regard to Steelcase's motion for summary disposition against Titan, the court concluded that Titan had an obligation to indemnify Steelcase against Bulliss's claim under ¶ 9 of the MPA.

In January 2015, Selective moved for summary disposition on Titan's claim in the insurance case. The CGL policy was not simply a reinsurance policy, with liability under the CGL wholly derivative of liability under another policy. Instead, by its terms, the CGL policy broadly covered both Titan and Steelcase for "bodily injury and property damage," with limited exceptions. Specifically with regard to bodily injury, the CGL policy excluded coverage for injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." The policy expressly stated that the term "use" included the "loading or unloading" of a motor vehicle or semitrailer. Selective argued that Bullis's injury was excluded from coverage under the policy because she was involved in the unloading of a trailer at the time of the injury, and that, because the CGL policy was not triggered, Selective had no obligation to defend or indemnify Titan. In response, Titan argued that the CGL policy did apply because the term "unloading" was defined in the CGL policy to mean the handling of property and the evidence showed that Bulliss did not suffer her injury while handling property. The trial court agreed with Titan and granted Titan's motion for summary disposition under MCR 2.116(I)(2).

In August 2015, Steelcase moved for entry of judgment in the negligence case. It stated that it had agreed to pay $112,500 to Bulliss to settle the dispute. Because the trial court already determined that Titan had an obligation to defend and indemnify Steelcase as a matter of law, Steelcase asked the trial court to enter judgment against Titan for the settlement and for Steelcase's attorney fees and costs, which amounted to $87,176.40.

The trial court in the negligence case issued an opinion and order granting Steelcase's motion for entry of judgment. The court held that Steelcase was entitled to judgment on the amount of the settlement, $112,500, but disagreed that Steelcase was entitled to attorney fees and

costs under the MPA. Accordingly, on November 30, 2015, the trial court entered judgment in favor of Steelcase against Titan in the amount of $112,500. Titan then appealed by right the trial court's judgment in the negligence case and Steelcase cross-appealed.

In November 2015, Steelcase moved for permission to intervene in the insurance case and the trial court granted the motion.

The trial court in the insurance case issued an opinion and order awarding expenses, fees, and costs in March 2016 under the separate CGLpolicy. The court held that Steelcase and Titan were both entitled to the "expenses, attorney fees, and costs that they incurred in taking on the responsibility that Selective Insurance should have borne in the first instance." It concluded that Steelcase should get the $112,500 from the settlement and its requested costs and fees of $87,176.40.[1] It also awarded to Titan the $55,591.40 in fees that it incurred in the Bulliss case along with $327.38 in costs. In March 2016, Selective appealed by right the judgment against it in the insurance case. This Court then ordered the appeals consolidated for the efficient administration of the appellate process. See *Bulliss v Steelcase, Inc*, unpublished order of the Court of Appeals, entered April 13, 2016 (Docket Nos. 330776 & 332227).

## II. DOCKET NO. 330776

### A. STANDARDS OF REVIEW

In Docket No. 330776, both Titan and Steelcase argue that the trial court erred by misconstruing the MPA and granting summary disposition on the basis of the erroneous construction. "This Court reviews de novo whether the trial court properly granted a motion for summary disposition." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly construed and applied the parties' contractual agreement. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014).

### B. ANALYSIS

*Titan's Duty to Indemnify Under ¶ 9 of the MPA*. We address first Titan's claim that the trial court erred when it determined that, under ¶ 9 of the MPA, Titan had a duty to indemnify Steelcase for Steelcase's losses from Bulliss's claim.

We construe contracts for indemnification in the same manner as any other contract. *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 603; 576 NW2d 392 (1997). The key concern "is to give effect to the parties' intention at the time they entered into the contract." *Miller-Davis Co*, 495 Mich at 174. To that end, we must give contracts for indemnity a reasonable construction so as to carry out, rather than defeat, the purpose for which they were

---

[1] Recognizing the parallel negligence case, the trial court in the insurance case further held, "If plaintiff Steelcase has already obtained indemnification from Plaintiff Titan for [the] sum [of $112,500], then Defendant Selective Insurance shall instead pay $112,500 to Titan."

-4-

executed. *Title Guaranty & Surety, Co v Roehm*, 215 Mich 586, 592; 184 NW 414 (1921). If the agreement for indemnification is ambiguous, the intent of the parties must be determined by the trier of fact. *Sherman v DeMaria Bldg Co, Inc*, 203 Mich App 593, 596; 513 NW2d 187 (1994). Where a contract is not ambiguous, however, it is the trial court's duty in the first instance, and this Court's duty on appeal, to enforce the contract as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005); *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). A contract is ambiguous when two of its provisions irreconcilably conflict, or when a provision is equally susceptible to different meanings. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

Two provisions of the MPA are potentially implicated here. In ¶ 9 of the MPA, Titan agreed to indemnify Steelcase for claims for injuries by its employees against Steelcase. Specifically, in relevant part, Titan agreed to "hold harmless and indemnify [Steelcase] for any claim for insurance premium or any claim by any employee of [Titan] for injuries sustained in the ordinary course of business, including, but not limited to, drivers, lumpers, helpers, agents or sub-contractors of [Titan]." There was no exception for claims of negligence against Steelcase in ¶ 9.

For its part, ¶ 10 of that agreement includes a broader indemnity clause, but one with exceptions, where Titan agreed to:

> at all times indemnify, defend and hold harmless [Steelcase], its agents and employees against and from any and all claims arising from the services provided hereunder [] including, without limitation, claims for personal injury, death and damage to property, clean-up costs from commodity spills and damage to the environment, unless due to the negligence or willful misconduct by [Steelcase].

Thus, unlike ¶ 9, the indemnity of ¶ 10 had an exception for claims of negligence against Steelcase.

A plain reading confirms that the provisions of ¶¶ 9 and 10 overlap in part. Whether ¶ 9 or ¶ 10 applies to the facts of this case is dispositive. It is clear from the record that Bullis was a truck driver for Titan, that she was injured performing the ordinary obligations of Titan's transportation contract with Steelcase, and that she claimed Steelcase acted negligently in causing those injuries. Accordingly, if ¶ 9 applies, Titan has a duty to indemnify Steelcase for the latter's damages sustained in the action, as arising from a claim by an employee of Titan, without regard to any claim of negligence. It is equally clear, however, that if ¶ 10 applies, then Titan has no duty to indemnify Steelcase, because that provision excludes negligence claims from Titan's general duty to indemnify.

On appeal, Titan maintains that ¶ 10, rather than ¶ 9, applies to Bulliss's claim against Steelcase. Titan argues that, because it was undisputed that Bulliss's claim was due to Steelcase's negligence in loading the trailer, and ¶ 10 excepts claims "due to the negligence" of Steelcase from Titan's obligation to indemnify, the trial court erred when it determined that Titan had an obligation to indemnify Steelcase. We disagree.

Where provisions of a contract overlap, a specific provision controls over a more general provision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367 n 22; 817 NW2d 504, 517 (2012). Paragraph 10 of the parties' agreement provides that Titan will indemnify Steelcase for "*any and all* claims arising from the services provided" under the agreement, including claims by employees and non-employees, claims of environmental damage, and claims of property damage, just to name a few. (Emphasis added). Paragraph 9 covers the more limited situation of a claim for damages by one of Titan's employee's against Steelcase. Thus, while both provisions cover the factual claims by Bullis, ¶ 9 more narrowly and precisely covers the claims. Accordingly, as the more specific provision, ¶ 9 governs the instant dispute.

Unlike the more general provision in ¶ 10, in ¶ 9 Titan did not explicitly exclude claims arising out of Steelcase's negligence from its obligation to indemnify Steelcase for claims by Titan employees. Rather, under ¶ 9, Titan agreed to indemnify Steelcase for "*any claim* by *any* employee of [Titan]." (Emphasis added). Despite this language, on appeal, Titan argues that both paragraphs must be construed in such a way as to graft the limitation on the duty to indemnify in ¶ 10 onto the duty to indemnify in ¶ 9. Again, we disagree.

This Court must assume that the parties' decision to omit an exception from the duty in ¶ 9 was deliberate. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 50 n 11; 664 NW2d 776 (2003) (stating that courts must read contracts as a whole and give harmonious effect to the contract whenever possible). Indeed, it is quite plausible that the parties intended that Titan indemnify Steelcase for a specific subset of claims—claims by its own employees against Steelcase—even when those claims involved Steelcase's own negligence, especially given that Titan managed and oversaw the work of its employees and was in a position to minimize risks to its employees through training, safety equipment, etc. It is equally plausible that the parties intended that Titan have no such obligation with regard to the broader class of claims described under ¶ 10 where Titan may not have been in the better position to minimize risks. There is no basis in the agreement itself for concluding that the parties intended the broader coverage of ¶ 10 to apply equally to employee claims under ¶ 9, and we will not read such a limitation into the agreement. *Northline Excavating, Inc v Livingston County*, 302 Mich App 621,628; 839 NW2d 693 (2013).

Accordingly, we conclude that the trial court did not err in determining that ¶ 9 of the MPA obligated Titan to indemnify Steelcase for the losses incurred as a result of Bulliss's lawsuit.

*Titan's Duty to Indemnify Under ¶ 9 Did Not Extend To Attorney Fees and Costs.* On appeal, Steelcase argues that the trial court correctly determined that Titan had a duty to indemnify Steelcase for Bulliss's claim but erred when it determined that the duty did not include an obligation to pay the attorney fees and costs that Steelcase incurred defending against Bulliss's claim. More specifically, Steelcase argues that the terms "hold harmless" and "indemnify" in ¶ 9 encompass the obligation to reimburse Steelcase for all expenses associated with the claim covered by the duty to indemnify, including Steelcase's attorney fees and costs. We disagree.

The extent of a party's duty to indemnify must be determined from the language of the contract establishing the obligation to indemnify. *Miller-Davis Co*, 495 Mich at 174. As already discussed, ¶ 10 does not apply to this dispute and, accordingly, cannot be used to form the basis

of Titan's obligation to pay Steelcase's attorney fees and costs.  Any such duty would necessarily have to be found in ¶ 9.

While the general rule for common-law indemnity claims appears to be that the indemnitee recovers reasonable attorney fees and costs from the indemnitor, see *Hayes v General Motors Corp*, 106 Mich App 188, 200; 308 NW2d 452 (1981), this general rule does not apply to claims for indemnity based in contract, see *id*. at 201.  Instead, any contractual claim for attorney fees and costs "must be based upon the indemnity agreement in issue." *Id*. at 201.

Paragraph 9 does not specifically include an obligation to pay attorney fees and costs.  When an agreement to pay attorney fees and costs is not expressly included in an indemnity provision, this Court may only read such an agreement into an indemnity provision if the language of the indemnity provision makes clear that the parties reasonably intended to include such an agreement.  In *Hayes*, 106 Mich App at 202, this Court concluded that an agreement to pay attorney fees and costs was included in a provision that the indemnitor would "indemnify, hold harmless, and defend" the indemnitee.  This Court reasoned that the duty to defend necessarily contemplated a duty to pay attorney fees and costs incurred in that defense. *Id*.  In *Redfern v RE Dailey & Co,* 146 Mich App 8, 19; 379 NW2d 451 (1985), this Court similarly concluded that an agreement to pay attorney fees and costs was included in an indemnity provision requiring the indemnitor to indemnify the indemnitee "against all claims, liabilities, losses, damages *and expense of every character whatsoever*."  This broad language evidenced the parties' intent to include all costs, including attorney fees, in the indemnity provision.  See *id*. at 20.  Finally, in *Beaudin v Michigan Bell Tel Co*, 157 Mich App 185, 189; 403 NW2d 76 (1986), this Court concluded that an agreement to pay attorney fees was *not* included in a provision requiring the indemnitor to indemnify and hold harmless the indemnitee "against all . . . claims."  In that case, the provision to indemnify against all claims was insufficient to conclude that the indemnitor agreed to pay the attorney fees and costs incurred in defending against those claims.  See *id*.

Through ¶ 9, Titan agreed to "hold harmless and indemnify" Steelcase for claims by Titan's employees.  We conclude that, similar to the indemnity clause in *Beaudin*, this language is insufficient to evidence the parties' intent to include an agreement to pay attorney fees and costs in ¶ 9's indemnity clause.  We find further support for this conclusion in the fact that the parties expressly included an obligation to "defend" in ¶ 10, which would likely include an obligation to pay attorney fees and costs, but omitted similar language from ¶ 9.  We must read that omission as intentional, and therefore we conclude that the trial court did not err by reading the MPA to exclude liability by Titan for Steelcase's attorney fees and costs in the negligence case.

### III.  DOCKET NO. 332227

Turning next to the insurance case, Docket No. 332227, Selective argues that the trial court erred in its conclusion that, because Bullis was not "unloading" the trailer at the time of her injury, her injury was not excluded from coverage under the GCL's exception for "use" of an automobile.  Specifically, Selective argues that whether Bullis was unloading the trailer is irrelevant because her opening the door of the trailer in question otherwise constitutes "use" of an automobile sufficient to invoke the exception.

Throughout the proceedings in the lower court, Selective consistently raised only one legal argument: Bullis's injury was excluded from coverage because she was "unloading" the trailer at the time of her injury, and it was this "unloading" which constituted the "use" of an automobile, which was excluded from coverage. On appeal, Selective has provided this Court with no argument sufficient to conclude that the trial court erred in its conclusion that Bullis was not "unloading" the trailer at the time of her injury, as that term was defined in the CGL policy.

It was Selective's burden to prove that the injury was excluded from coverage under the policy. See *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). Because Selective did not raise below any argument that the "use" exception applied regardless of Bullis's purported "unloading" of the trailer, neither Titan nor Steelcase had any notice of or duty to respond to that argument, see *Barnard Mfg*, 285 Mich App at 369, and the record was not fully developed for the trial court to address the issue in the first instance, or for this Court to address the issue on appeal, see *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("a litigant must preserve an issue for appellate review by raising it in the trial court."); *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (stating that it is not this Court's responsibility to "discover and rationalize the basis of [an appellant's] claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (internal quotation marks and citation omitted).

Accordingly, we decline to address this issue on appeal. *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 346; 852 NW2d 180 (2014) (stating that this Court "will exercise its discretion to review [unpreserved] claims sparingly and only when exceptional circumstances warrant review.") Because Selective has not identified any preserved errors that might warrant relief, we have no basis for disturbing the trial court's judgment in the insurance case.

## IV. CONCLUSION

We affirm the judgments in both dockets now before us on appeal.


/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell