### KAIN v STATE OF MICHIGAN

Docket No. 49365. Submitted June 1, 1981, at Grand Rapids.—Decided September 9, 1981. Leave to appeal applied for.

Mary K. Kain, as widow of Joseph L. Kain, deceased, filed petitions for workers' compensation benefits for the decedent's death resulting from a personal injury suffered in the course of his employment as an assignment clerk with the 61st Judicial District Court. The initial petition listed the City of Grand Rapids as the decedent's employer; the second designated the State of Michigan. Following a hearing, an administrative law judge found that the decedent's injury was received in the course of his employment and that the decedent was not an employee of the city and ordered the state to pay compensation. The state and the Michigan State Accident Fund appealed to the Workers' Compensation Appeal Board, which affirmed the judge's decision. The state appeals by leave granted and the city cross-appeals. *Held:*

1. The board applied the proper standard in determining that the decedent's death was work-related. The record reveals that the board's findings of fact were supported by competent, substantial, and material evidence.

2. The board erred in holding that the state is liable for payment of workers' compensation benefits. The decedent's employer was the judicial district. Pursuant to statute, the cost of operating the district is borne by the designated district control unit. Thus the district control unit is responsible for payment of compensation.

Affirmed in part, reversed in part.

R. B. BURNS, P.J., dissented. He would hold that the state is the employer of district court employees. He would affirm.

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 300.
[2] 82 Am Jur 2d, Workmen's Compensation § 552.
[3] 82 Am Jur 2d, Workmen's Compensation § 240.
[4, 5] 82 Am Jur 2d, Workmen's Compensation § 407.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — WORK-RELATED INJURIES — HEART ATTACK.

   Workers' compensation benefits are payable for work-related heart damage including injury caused by job-related stress without regard to whether there was unusual exertion by an employee prior to a heart attack.

2. WORKERS' COMPENSATION — WORK-RELATED INJURIES — FINDINGS OF FACT — HEART ATTACK — APPEAL.

   Findings of fact by the Workers' Compensation Appeal Board that there was a causal nexus between a decedent's job and his heart attack will not be disturbed on appeal where those findings are supported by competent evidence and the board applied the correct legal standard.

3. WORKERS' COMPENSATION — WORK-RELATED INJURIES.

   Workers' compensation benefits are payable where work has accelerated or aggravated a worker's illness, disease, or deterioration and thus contributed to it, or the work, coupled with the illness, disease, or deterioration, causes the injury in fact.

4. WORKERS' COMPENSATION — DISTRICT COURT EMPLOYEES — DISTRICT CONTROL UNITS — WORKERS' COMPENSATION BENEFITS — STATUTES.

   Employees of a district court are employees of a particular judicial district and not of the county, city, or other district control unit or of the State of Michigan; however, because the district control unit is obligated to finance the costs of operating the district court, including providing workers' compensation insurance, the unit is liable for payment of workers' compensation benefits (MCL 600.8104[2]; MSA 27A.8104[2]).

DISSENT BY R. B. BURNS, P.J.

5. WORKERS' COMPENSATION — DISTRICT COURT EMPLOYEES — WORKERS' COMPENSATION BENEFITS.

   *Employees of a district court are employees of a particular judicial district which is an administrative unit of Michigan's one district court which, in turn, is a subdivision of the state's one court of justice; they are not employees of a county, city, or other district control unit and the state is liable for payment of workers' compensation benefits to them.*

*William G. Reamon, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eileen D. Ziel-*

*esch* and *Joseph M. Binno,* Assistants Attorney General, for the State of Michigan and Michigan State Accident Fund.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for the City of Grand Rapids.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

ALLEN, J. Which unit of government, the State of Michigan or the City of Grand Rapids, is liable for workers' disability compensation benefits due the dependents of the deceased, an assignment clerk of the 61st District Court? This question of first impression comes to us as a result of a determination made on December 14, 1979, by the Workers' Compensation Appeal Board that decedent's death arose out of and in the course of his employment with the 61st Judicial District Court and that, pursuant to *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710; 190 NW2d 219 (1971), the deceased was an employee of the State of Michigan. From both determinations, the State of Michigan appeals by leave granted. Defendant City of Grand Rapids cross-appeals only the determination that decedent's death arose out of and in the course of the deceased's employment.

In the latter part of 1968, the deceased, Joseph L. Kain, was hired by the 61st District Court as a bailiff. Some six months later, he was hired by the five judges who serve in that court as the court's assignment clerk. He continued to be employed in that position until his death on February 15, 1974. Early in the afternoon on that date, the deceased came to the second floor of the building in which he worked, perspiring and looking pale. He com-

* Circuit judge, sitting on the Court of Appeals by assignment.

plained of chest pains and stated he was going to his doctor's office. He arrived at the doctor's office about 3 p.m., where he sustained an apparent cardiac arrest and was pronounced dead on arrival at a hospital at about 3:34 p.m.

Two petitions were filed on behalf of Mary Kathryn Kain, plaintiff and widow of the deceased. The first, filed in March, 1974, listed the City of Grand Rapids as employer. The second, filed in May, 1974, designated the State of Michigan as employer. On October 25, 1976, an administrative law judge found that the decedent suffered a personal injury in the course of his employment, resulting in death, that the deceased was not an employee of the City of Grand Rapids, and that his death was the result of a coronary thrombosis precipitated by the deceased's negotiating stairs between 1:30 and 2 p.m. on February 15, 1974. Appeal was taken by the State of Michigan and its statutory insurance carrier, Michigan State Accident Fund, to the Workers' Compensation Appeal Board (WCAB).

The appeal board stated the issues as follows: (1) Did plaintiff sustain her burden of proving that her husband's death arose out of and in the course of his employment with the 61st Judicial District Court?, and (2) Did the hearing referee err in finding that the State of Michigan was the employer of decedent? In a 25-page decision summarizing the testimony and conflicting claims in detail issued December 14, the appeal board affirmed the administrative law judge's decision that decedent suffered a compensable injury. In so doing, the appeal board did not base its decision on the narrow grounds found by the administrative law judge, *viz.:* coronary thrombosis precipitated "by negotiating stairs between 1:30 and 2:00 p.m. on 2-

15-74". Instead, the appeal board found that "employment related stress accelerated the development of this (coronary artery) disease process within the decedent" and "the fatal episode occurred far sooner than it might otherwise have occurred because of the accelerating effect of the employment generated stress on the underlying disease process". On the second issue, the appeal board found:

"The State of Michigan argues strenuously that the decedent was not its employee, but, rather, that Mr. Kain was employed by the City of Grand Rapids. This board lacks the power to resolve constitutional issues. However, in *Judges of the 74th Judicial Dist v Bay County*, 385 Mich 710 [190 NW2d 219] (1971), the Michigan Supreme Court determined that employees of a judicial district were to be deemed employees of the state, rather than employees of the district control unit, despite the fact that they were actually paid by that control unit. Therefore, I find that Joseph Kain was an employee of the State of Michigan and affirm the referee's dismissal of the City of Grand Rapids as a party defendant in this cause."

*I. Did the Workers' Compensation Appeal Board apply the correct legal standard in determining that the decedent's death was work-related, and are such findings of fact and conclusions of law supported by competent, substantial, and material evidence on the record?*

Defendants contend that because the appeal board made no findings relative to the amount of exertion used by decedent within an hour or so of his death[1] the requisite "exertion" required as a

---

[1] On cross-examination decedent's secretary testified as follows:

"*Q*. So you don't know whether or not Mr. Kain used the stairway or the elevator the day in question?

"*A*. I'm sure it was the elevator. He always used that.

condition of liability in *Zaremba v Chrysler Corp,* 377 Mich 226; 139 NW2d 745 (1966), is lacking. We do not read *Zaremba* as requiring some unusual exertion. Neither does our Supreme Court which said in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 125-126; 274 NW2d 411 (1979):

"In *Zaremba v Chrysler Corp,* 377 Mich 226, 231; 139 NW2d 745 (1966), the Court declared that compensation was payable for work-related heart damage *without regard to whether there was unusual exertion before the attack:*

\* \* \*

"Medical theory appears to be unanimous that work-related stress can precipitate or aggravate cardiac injury. The Legislature has, for certain occupations, created a presumption that a relationship between employment and cardiac injury exists. This Court has approved recovery under the workers' compensation law for heart injury caused by job-related stress. We do not add to or disturb those precepts, but, rather, address matters of proof." (Emphasis supplied.) (Footnotes omitted.)

The appeal board's finding that decedent suffered severe stress in his job is overwhelmingly supported by the record. The presiding judge of the district court described the job of assignment clerk as "a pressure pot" job. James Farrer, court administrator for the 61st District, testified that he became increasingly aware of friction developing between the deceased and other employees and that people who worked with the deceased commented that the deceased looked tired. The deceased's secretary testified of increasing friction between the deceased and the court administrator

*"Q. So he did not, as Mr. Reamon suggested, walk up and down the stairs to your knowledge?*
*"A. No. I would say not."* (Emphasis supplied.)

which caused the deceased to feel that he was "being squeezed closer and closer into a corner" and to consider leaving the job. Other witnesses testified that in the last few months deceased had lost a lot of weight, looked tired and gray, and had noticeably aged. Two doctors, each a specialist in cardiology, testified that in their opinion the demands of the job were an important accelerating, aggravating, and contributing factor in the decedent's premature death from coronary arteriosclerosis. A third medical expert, Dr. Richard Bates, testifying for the defendants, stated that in his opinion the deceased's heart attack was in no way related to his employment.[2]

In *Teddy v Dep't of State Police,* 102 Mich App 412; 301 NW2d 876 (1980), a case factually similar to the instant case, a lieutenant in the personnel division suffered a heart attack while at work. He died some seven weeks later. As in the instant case, there was abundant testimony of work-related pressures, hostilities, and conflicting demands, but no evidence of unusual exertion on the day of the seizure. Likewise, Dr. Bates, testifying for the defendants, stated that the heart attack was unrelated to the deceased's job while the plaintiff's medical witness testified that on the job emotional stress was at least one of the factors in the development of the deceased's arteriosclerotic heart disease. The WCAB found the injury to be work-related and the defendants appealed, claiming, as here, that the testimony did not establish a

---

[2] "Q. And why was that, doctor, if you could explain.

"A. Mr. Kain worked generally about 40 hours a week at a job that he enjoyed. There were tensions at work as there are in any job that is enjoyable for normal people. On the day of his death, without previous warning, he suffered a heart attack. That day was no different than any previous days in his employment when he did not suffer a heart attack. There is no logical way in which we can state that his employment then brought on or aggravated his death."

work-related compensable heart attack under the standards set forth in *Kostamo.* This Court rejected the defendants' claim saying:

".As required by *Kostamo,* the WCAB carefully assessed the probabilities in light of the factual background through an examination of both medical and lay testimony. It is also clear from the opinion which testimony was accepted and which was rejected by the WCAB.

*   *   *

"It is our opinion that the WCAB properly set forth the legal standard to be employed, the testimony adopted, and the path it followed through the conflicting evidence in reaching its conclusion. There was ample evidence to support a causal nexus between the deceased's job and his heart attacks. The WCAB was definite in its conclusion that the employment was related to the injury. The evidence, both from the record of the hearing before the administrative law judge and from the independent hearing conducted by the WCAB, amply supports the WCAB's conclusion and, therefore, may not be disturbed on appeal." *Teddy, supra,* 417-418.

Similarly, we find ample evidence to establish a causal nexus between the deceased's job and the heart attack on February 15, 1974.

The state's second ground for contending that the appeal board applied an improper standard in awarding benefits is the following language in *Kostamo, supra,* 116:

"Arteriosclerosis is an ordinary disease of life, which is not caused by work or aggravated by the stress of work."

This claim, which was not raised or addressed in *Kostamo,* must be considered in context with the entirety of the *Kostamo* opinion. The instant case

is similar to the claim involving *Jarman v Atlas Supply Co,* reported with *Kostamo.* Jarman had arteriosclerotic heart disease, suffered a heart attack, and lived. The issue was whether the work was a cause of the heart damage. In *Jarman,* the WCAB awarded benefits, finding that there was evidence of stress in the employment and adopting the expert testimony offered by Jarman relating the stress to his heart damage.

The Supreme Court set forth the test to determine whether compensation is payable:

"Unless [1] the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, *or* [2] the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable." *Kostamo, supra,* 116. (Emphasis supplied.)

The Supreme Court found that although "[a]rteriosclerosis is an ordinary disease of life which is not caused by work or aggravated by the stress of work", Jarman had produced evidence of job stress and had related the stress to the heart damage. Therefore, *Jarman* was within the second alternative which allowed the payment of compensation.

Likewise, in the present case, plaintiff produced evidence of job stress and related the stress to the heart damage. The WCAB correctly awarded benefits.

*II. Did the Workers' Compensation Appeal Board err in holding that the State of Michigan was the decedent's employer and, accordingly, was liable for workers' compensation benefits to the decedent's dependents?*

The question raised is of first impression. The determination that the state was Kain's employer

and the subsequent affirmance by the Workers' Compensation Appeal Board hinged, to a large extent, on the Supreme Court's holding in *Judges of the 74th Dist, supra.* There the issue was whether a collective-bargaining agreement, executed by a county board of commissioners as an employer, bound a judicial district. The Court held:

"Employees of the district court are employees of the judicial district, an administration unit of the state's one district court, which in turn is a subdivision of Michigan's one court of justice. They are not employees of the county, city or other district control unit, even though they are paid by the district control unit." *Id.,* 723.

The Court explained its reasoning:

"Our decision today is not only consistent with the manifest legislative intent but wholly consonant with the constitutionally prescribed functioning of the courts under inherent powers." *Id.,* 727.

Although *Judges of the 74th Dist* did not deal with the determination of an employer for purposes of the Worker's Disability Compensation Act, its holding at first blush appears to support the finding of the Workers' Compensation Appeal Board that the state was Mr. Kain's employer. The Attorney General disagrees, claiming that *Judges of the 74th Dist* is not controlling in that it is inconsistent with a series of Supreme Court decisions holding that the existence of an employer-employee relationship for *workers' compensation purposes* is to be determined by the economic realities of the situation. *Goodchild v Erickson,* 375 Mich 289, 293; 134 NW2d 191 (1965), *Solakis v Roberts,* 395 Mich 13, 25; 233 NW2d 1 (1975),

*Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976). In *Askew, supra,* 217, the Court stated that the relevant factors of the "economic reality test" were:

"(1) Control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal."

Application of the *Askew* factors to the situation before us discloses that as to factor (2) the city would be the decedent's employer, but as to factors (1), (3) and (4) the judicial district would be the decedent's employer. Judge Woodrow A. Yared, testifying in his capacity as the presiding judge of the 61st District Court, explained that the entire salary of the decedent and all district court employees was paid by the City of Grand Rapids. The decedent received no financial remuneration from the state. Furthermore, the operative salary range for all court employees, except the judge,[3] is subject to local control. Judge Yared also testified that the district court judges had control of a district court employee's duties and had the right to hire, fire, and discipline an employee. He explained that decedent was definitely an integral part of the court system which was administered by a district court administrator who reported to the district court judges. Thus, depending upon the relative weight given each factor, *Askew* leads to mixed

[3] The salary of the district judge (as distinguished from all other court employees) is paid by the state and is equal to 90% of the annual salary paid by the state to a circuit judge. However, in addition, the district judge "may receive from the district control unit in which the judge regularly holds court an additional salary as determined by the governing legislative body thereof". MCL 600.8202; MSA 27A.8202.

conclusions as to who was the decedent's employer. Nevertheless, on balance, we are of the opinion that the decedent was not a city employee nor a state employee in the sense that term is generally understood but, instead, was an employee of the 61st judicial district which is an administrative unit of the state's one court of justice. In this respect, our decision conforms with the holding in *Judges of the 74th Judicial Dist, supra.*

However, it does not necessarily follow that the state is responsible for workers' compensation benefits. This, we perceive, is the flaw in the decision of the appeal board. *Judges of the 74th Judicial Dist* did not hold that the State of Michigan was the employer. Instead, it held that "the judicial district" was the employer. A judicial district is an entity created by statute.

"A district court is established in the state. The district court is a court of record. The state is divided into judicial districts of the district court each of which is an administrative unit subject to the superintending control of the supreme court." MCL 600.8101(1); MSA 27A.8101(1).

The 61st judicial district is defined as follows:

"The sixty-first district consists of the city of Grand Rapids, is a district of the third class and has 5 judges." MCL 600.8130(1); MSA 27A.8130(1).

Section 8104 then establishes a "district control unit"[4] which in the case of the 61st district is the

---

[4] "(a) The county in districts of the first and second class.

"(b) The city or township in districts of the third class except as provided in subdivision (c).

"(c) The city or the incorporated village in districts of the third class in which portions of 2 townships comprise an incorporated village." MCL 600.8104(1); MSA 27A.8104(1).

City of Grand Rapids and proceeds to state that except as otherwise provided the entire cost of operating the court is the responsibility of the "district control unit".

"Except as otherwise provided in this act, a district control unit shall be responsible for maintaining, financing, and operating the court only within its political subdivision." MCL 600.8104(2); MSA 27A.8104(2).

As part of its obligation to maintain and operate the court, the district control unit has control of its workers' duties and the right to hire, fire, and discipline its employees. One aspect of maintaining the court is ensuring that the court's employees are protected against job-related injuries. Nothing provided elsewhere in the act places this responsibility on the state.

The district control unit's obligation to finance the court also suggests that the unit is the employer for workers' compensation purposes. The only court cost assumed by the state under the "except as otherwise provided" language of § 8104(2) is the salary of the district judge and, more recently upon enactment of 1980 PA 438, *infra,* the cost of dictating equipment. MCL 600.8621(2); MSA 27A.8621(2). In other words, a reading of the various sections of the statute as a whole discloses a clear legislative intent to make the judicial district the employer but, except for the judges' salaries (even that could be supplemented by the district) and dictating equipment, mandates that the "local control unit" is to pay all the costs of operating the court.[5] Again, we empha-

---

[5] In a memorandum filed with the hearing referee, the City of Grand Rapids admitted that under § 8104 it was responsible for paying "expenses, maintaining, financing and operating the district court in the city". However, the city argues that providing workers' compensation coverage was not one of the included expenses.

size that the statute does not make the state the
employer. Instead, the employer is the *judicial
district,* whose entire costs (with the two excep-
tions noted) are paid by the "local control unit".
While it is true that in most instances the em-
ployer is the party charged with providing work-
ers' compensation insurance, such is not true
where the Legislature mandates that someone else
assume the cost. In the case before us, that "some-
one else" is the local control unit. Thus, even if
one concludes that a "judicial district" is the State
of Michigan, it is clear that the Legislature has
required the local control unit to provide coverage.
Accordingly, we hold that the appeal board did err
in holding that defendant State of Michigan was
liable for workers' compensation benefits to dece-
dent's dependents.

Our holding in the above respect is strengthened
by the passage of 1980 PA 438, approved by the
Governor on January 15, 1981. That act reorgani-
zed the court system in Wayne County by merging
the administrative functions of the Wayne Circuit
and Recorder's Courts, abolishing the Recorder's
Court Traffic and Ordinance Division and the Com-
mon Pleas Court, and replacing them with the
36th District Court for the City of Detroit. The bill
provides that the employees of the 36th District
Court shall become state employees and further
provides that the state, in addition to paying the
salaries of district court employees, would gradu-
ally assume the operating and maintenance costs
of the court. House Legislative Analysis of Senate
Bill 1106 and House Bill 5630,[6] dated March 6,
1981, explained the relevant section of 1980 PA
438 as follows:

---

[6] SB 1106 and HB 5630 became 1980 PA 438 and 1980 PA 440,
respectively.

"Senate Bill 1106 would establish an eight-member state judicial council to serve as the employer of employees who worked in the circuit, recorder's, probate or district court and were paid by the state. However, the council would not be the employer of judges, and would be the employer of district court magistrates for compensation purposes only.

\* \* \*

"The state would pay the compensation of employees working in the Thirty-Sixth District Court, and would provide funding to meet operational and maintenance expenses of the court beginning in the 1982-83 state fiscal year."

The fact that the amendatory act explicitly provides that employees of the newly created 36th District Court are to be state employees and further provides that commencing after a date certain the state will begin paying operational and maintenance costs of the district court indicates to us that the Legislature did not intend that employees in other judicial districts were state employees or that the state would be responsible for workers' compensation benefits. Until the Legislature makes comparable amendments affecting the employees of other judicial districts, workers' compensation insurance is the responsibility of the designated control unit. Accordingly, the determination of the Workers' Compensation Appeal Board as to issue II is reversed. The determination as to issue I is affirmed.

Affirmed in part, reversed in part. No costs, a question of public importance being involved.

T. GILLESPIE, J., concurred.

R. B. BURNS, P.J. *(dissenting).* The Supreme Court in *Judges of the 74th Judicial Dist v Bay*

*County,* 385 Mich 710, 723; 190 NW2d 219, 224 (1971), stated:

"Employees of the district court are employees of the judicial district, an administration unit of the state's one district court, which in turn is a subdivision of Michigan's one court of justice. *They are not employees of the county, city or other district control unit, even though they are paid by the district control unit."* (Emphasis added.)

I fail to see any distinction between *Judges of the 74th Judicial Dist* and the present case. I would affirm.