CAMERON v MONROE COUNTY PROBATE COURT

Docket No. 159808. Submitted December 5, 1995, at Detroit. Decided December 28, 1995, at 9:25 A.M.

Cindy L. and Lawrence M. Cameron brought an action in the Monroe Circuit Court against the Monroe County Probate Court and James Seitz, J., in his capacity as a Monroe County Probate Court judge, seeking damages for marital-status employment discrimination and loss of consortium. The probate court then filed a third-party complaint against Monroe County, alleging that the county was the legal entity responsible for paying any judgment that might be rendered against the probate court. Mediation of the principal complaint resulted in a recommended award for the plaintiffs with respect to the probate court. The plaintiffs and the probate court accepted the recommendation and a judgment was entered against the probate court. The court, Robert J. Colombo, Jr., J., considered cross motions for summary disposition with regard to the third-party complaint and granted summary disposition for the county. The Monroe County Probate Court appealed.

The Court of Appeals *held:*

1. Although the county is the funding unit for the probate court, payment of a judgment against the probate court is not within the statutory obligation of the county. The funding obligation of the local funding unit of the probate court extends only to the provision of those funds that are necessary to the probate court's performance of its statutorily mandated functions. Payment of a money judgment is not a statutory function of the probate court. The state, not the county, is primarily responsible for the payment of any judgment against the probate court.

2. Cindy Cameron was an employee of the probate court, not the county.

3. The trial court properly found common-law indemnification to be inappropriate and inapplicable in this case.

Affirmed.

REFERENCES

Am Jur 2d, Municipal Corporations § 235.

See ALR Index under Probate Courts and Proceedings.

1. COURTS — PROBATE COURTS — EMPLOYEES.

　　Employees of the probate court are not employees of the probate court's funding unit.

2. COURTS — LOCAL FUNDING UNITS — PROBATE COURTS — FUNDING OBLIGATION.

　　A probate court's local funding unit's obligation to pay funds beyond those appropriated for the court is limited to those funds that are necessary to enable the court to perform its statutorily mandated functions; the payment of a money judgment against the probate court is not a statutory function of the local funding unit.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gary P. Gordon, Leo H. Friedman,* and *Richard P. Gartner,* Assistant Attorneys General, for the Monroe County Probate Court.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gail P. Massad*), for Monroe County.

Before: MICHAEL J. KELLY, P.J., and REILLY and E. SOSNICK,* JJ.

PER CURIAM. Defendant and third-party plaintiff, the Monroe County Probate Court, appeals as of right from the December 21, 1992, order issued by visiting Monroe Circuit Court Judge Robert J. Colombo, Jr.,[1] that granted summary disposition for third-party defendant Monroe County. Judge Colombo ruled that Monroe County was not responsible for paying a money judgment received by plaintiff Cindy Cameron against the Monroe County Probate Court.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This action was filed in the Monroe Circuit Court. Judge Colombo, a Wayne Circuit judge, was appointed to act as a visiting Monroe Circuit judge because all the other Monroe Circuit judges had disqualified themselves because of their association with defendant James Seitz, a former Monroe County Probate Court judge.

I

On May 16, 1991, the plaintiffs in the underlying lawsuit, Cindy and Lawrence Cameron, sued the Monroe County Probate Court and James Seitz in his capacity as a Monroe County Probate Court judge, alleging claims of marital-status discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and loss of consortium.[2] The Monroe County Probate Court thereafter filed a third-party complaint against Monroe County, alleging that Monroe County was the legal entity responsible for paying any judgment that might be rendered against the probate court.

Mediation of plaintiffs' principal complaint resulted in a recommended award of $25,000 for the plaintiffs with respect to the Monroe County Probate Court. The plaintiffs and the Monroe County Probate Court accepted this mediation recommendation and, accordingly, a judgment for $25,000 was entered against the Monroe County Probate Court pursuant to MCR 2.403(M)(2).

Cross motions for summary disposition were subsequently filed with respect to the third-party complaint. At a hearing on October 20, 1992, Judge Colombo issued a ruling from the bench granting Monroe County's motion for summary disposition pursuant to MCR 2.116(C)(1), and denying the Monroe County Probate Court's motion for summary disposition. Relying on *Kell v Johnson,* 186 Mich App 562; 465 NW2d 26 (1990), Judge Colombo ruled that, although Monroe County is

[2] Cindy Cameron was formerly employed as Judge Seitz' judicial secretary. She resigned her position in 1990 when Judge Seitz became hostile toward her shortly after she announced her intention to marry plaintiff Lawrence Cameron. Judge Seitz was removed from his judicial office in 1993 for judicial misconduct involving, in part, his relationship with, and conduct toward, Cindy Cameron. See *In re Seitz,* 441 Mich 590, 604-611; 495 NW2d 559 (1993).

the funding unit for the Monroe County Probate Court, payment of a judgment is not within the statutory obligation of the funding unit and, therefore, the state, not Monroe County, is primarily responsible for payment of any judgment entered against the probate court. We affirm.

## II

The parties are in disagreement over which party was Cindy Cameron's employer, as well as the significance of the existence of an employer-employee relationship. Monroe County argues that, because Cindy Cameron's underlying lawsuit was premised upon discrimination during the course of her employment, it may not be held liable for the judgment recovered by Cameron unless it was Cameron's employer, which it maintains it was not. Monroe County insists that the Monroe County Probate Court was Cameron's employer.

In *Judges of the 74th Judicial Dist v Bay Co*, 385 Mich 710, 723; 190 NW2d 219 (1971), our Supreme Court held that district court employees are employees of the judicial district, not the city or county:

> Employees of the district court are employees of the judicial district, an administration unit of the state's one district court, which in turn is a subdivision of Michigan's one court of justice. They are not employees of the county, city or other district control unit, even though they are paid by the district control unit.

Here, too, the Monroe County Probate Court is an administrative unit of the state's one probate court, which in turn is a subdivision of Michigan's one court of justice. Const 1963, art 6, § 1:

The judicial power of the state is vested exclusively in *one court of justice* which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, *one probate court,* and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house. [Emphasis added.]

The decision in *Judges of the 74th Judicial Dist, supra,* leads to the conclusion that Cindy Cameron was an employee of the Monroe County Probate Court, and not Monroe County. This conclusion is supported by OAG, 1979-1980, No 5553, p 372 (September 5, 1979), which held that the probate court, not the county, is the "public employer" of probate court employees for purposes of collective bargaining.

The Attorney General, representing the Monroe County Probate Court, now contends that the county was the employer. He relies on *Nezdropa v Wayne Co,* 152 Mich App 451; 394 NW2d 440 (1986), and *Kain v Michigan,* 109 Mich App 290; 311 NW2d 351 (1981), but most heavily on the recent case of *Grand Traverse Co v Michigan,* 450 Mich 457; 538 NW2d 1 (1995). He does not refer to his 1979 opinion, *supra.*

We distinguish *Kain* because that case was resolved not on the basis that the city was the employer of the district court clerk but, rather, on the basis that the city was statutorily liable for payment of worker's compensation benefits because it was the district control unit for the judicial district. Indeed, that opinion expressly held that the clerk was not an employee of the city. *Kain* does not support the Attorney General's argument.

*Nezdropa* was also a worker's compensation dispute and is applicable only in that context.

Neither does the Attorney General's reliance on MCL 600.9101 *et seq.*; MSA 27A.9101 *et seq.* support his argument. Section 9101(1) establishes a State Judicial Council and states that the council "is the employer of the employees of the judicial branch of state government who serve in the circuit, recorder's district, or probate court and who are paid by the state, but is not the employer of judges." Because both parties concede that Cindy Cameron was not a state-paid employee, she could not be considered an employee of the State Judicial Council under § 9101(1).

The Attorney General on behalf of the Monroe County Probate Court contends that "only those employees of the State Judicial Council are considered employees of the State." However, neither of the two statutes cited for this proposition, MCL 600.593; MSA 27A.593 and MCL 600.8273; MSA 27A.8273, supports such a claim. The cited statutes merely indicate that certain employees of the Wayne Circuit Court, the Detroit Recorder's Court, and the 36th District Court are employees of the State Judicial Council. The statutes do not address the status of employees of other courts. The statutes merely define who is an employee of the "State Judicial Council." Merely because someone is not an employee of that particular state entity does not mean that they may not otherwise be considered a state employee. In any event, the ultimate issue to be decided in this case is not which entity was Cindy Cameron's employer, but, rather, which entity is legally responsible for payment of a money judgment rendered against the Monroe County Probate Court.

III

As the Supreme Court observed in *Grand Trav-*

*erse Co v Michigan, supra* at 474, "the courts have always been regarded as part of state government." In *Kell v Johnson, supra,* which was relied upon by Judge Colombo in this case, an employee of the 88th District Court sued the district court and its presiding judge in his official capacity for wrongful discharge. This Court, *id.* at 564-565, ruled that the case properly belonged in the Court of Claims because the state would be primarily responsible for payment of any judgment.

> The exclusive jurisdiction of the Court of Claims encompasses all claims against the state and its instrumentalities for money damages.
>
> By statute, the "district control unit" (i.e., the 88th Judicial District) is responsible for specific statutory operating costs. See MCL 600.8101 *et seq.*; MSA 27A.8101 *et seq.* Because there is no statutory obligation for the district control unit to pay a judgment, we agree with the trial court that the state would be primarily responsible for a judgment, if any, which plaintiff may obtain against defendant district court or defendant district court judge in his official capacity. See *Judges of the 74th Judicial Dist v Bay Co.* Thus, we find no error in the trial court's determination that plaintiff's case should be transferred to the Court of Claims. [Citation omitted.]

The appellant probate court attempts to distinguish *Kell* on two different grounds. First, it contends that the holding in *Kell* is dicta. It isn't. A reading of *Kell* discloses that this Court's statement, *id.* at 565, that "the state would be primarily responsible for a judgment" was essential to its conclusion that the case belonged in the Court of Claims. Therefore, the statement is not dicta. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597-598; 374 NW2d 905 (1985).

The Monroe County Probate Court also contends

that *Kell* is distinguishable because "[u]nlike district courts, probate courts have no responsibility for statutory operating costs."

With respect to district courts, MCL 600.8104; MSA 27A.8104 establishes "district control units," which are defined as either the county, city, or township, depending on where the district court is located, and the statute provides that "a district control unit shall be responsible for maintaining, financing, and operating the court only within its political subdivision." A similar provision is not contained within the statutes governing the administration of the probate courts. MCL 600.801 *et seq.*; MSA 27A.801 *et seq.* However, the Legislature has explicitly allocated the burden of financing various aspects of the probate court to the local counties. See, e.g., MCL 600.817; MSA 27A.817 (county responsible for "all books, printed blanks and other stationary necessary for keeping the records in the office of the judge of probate, and all furniture, equipment, and supplies necessary for equipping and maintaining the office"); MCL 600.821(2); MSA 27A.821(2) (county responsible for payment of a portion of each probate judge's salary); MCL 600.829(3); MSA 27A.829(3) (county responsible for compensation of visiting judges); MCL 600.833; MSA 27A.833 (county responsible for compensation of probate register); MCL 600.835; MSA 27A.835 (county responsible for payment of compensation and expenses of official court stenographers). Just as in *Kell* with respect to district courts, there is no statutory obligation for a county to assume responsibility for payment of a money judgment rendered against a probate court.

In *Grand Traverse Co, supra,* our Supreme Court recognized that, while courts have always been regarded as part of state government, they have operated historically on local funds and re-

sources, and that the principle of local funding of most expenses continues today as a fair way of apportioning public expenses, but that the Legislature has stopped short of placing the entire burden of court financing on local funding units. As discussed previously, however, in *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co,* 423 Mich 705, 720-722; 378 NW2d 744 (1985), our Supreme Court limited the local funding unit's obligation to pay funds beyond those appropriated to those funds that are necessary to enable the court to perform a statutory function. It follows, therefore, that the funding obligation of a local funding unit extends only to the provision of those funds that are "necessary to the performance [by the court] of its statutorily mandated function." *Id.* at 722. Payment of a money judgment is not a statutory function of the probate court.

Thus, because there is no statutory obligation for the county to pay a money judgment against the probate court, and because payment of a money judgment by the probate court is not a statutory function of the court, we believe the lower court did not err in ruling that the holding in *Kell* may properly be extended to the facts of this case so as to require the conclusion that the state is primarily responsible for the money judgment against the Monroe County Probate Court.

We also agree with the trial court that common-law indemnification is inapplicable and inappropriate here. The right to common-law indemnification is based on the equitable principle that where the wrongful act of one party results in another being held liable, the latter party is entitled to restitution. Neither the county nor the probate court engaged in any wrongdoing, but was, at most, a passive participant in what occurred.

Affirmed.